BOON v. JAMES et al.

(Supreme Court, Appellate Division, Fourth Department. October 15, 1897.)

1. VENDOR AND PURCHASER—ACTION TO RESCIND SALE—SUFFICIENCY OF COMPLAINT.

A complaint alleged that defendants, as partners, owned certain lots, title of which was in the name of W., their agent; that one M. was also their agent; that such agents, acting for defendants, represented to plaintiff that the lots were free from incumbrances, etc.; that plaintiff, relying on such representations, bought the lots, and received from W. a full covenant warranty deed; that such representations were false; that they were incumbered by two mortgages; that the first mortgage was foreclosed, and the lots were sold to a third person; that defendants did not redeem, but allowed title to pass; that defendants received the money paid by plaintiff; and that plaintiff, before suit, rescinded the sale, returned the deed, and duly conveyed the lots to defendants. Held to state a cause of action.

2. SAME—LACHES—EVIDENCE—BURDEN OF PROOF.

In an action by a vendee of land to rescind the sale for fraud as to the defense of laches the burden of proof is on defendant.

Appeal from trial term, Livingston county.

Action by Norman P. Boon against Charles S. James and others to rescind a sale of land by defendants to plaintiff, and recover the purchase money paid. From a judgment of nonsuit, plaintiff appeals. Reversed.

Appeal by the plaintiff from a judgment entered in Livingston county on the 24th of February, 1897, in favor of the defendants for costs after a trial at a trial term in that county, where a motion for a nonsuit was granted, based upon the following two grounds: First. That, "in order to enable the plaintiff to maintain it [the action], he should have alleged the fraudulent intent, and falsity of knowledge, and also deceit, intent to deceive; and that he has neither alleged it nor proven it." Second. That it is not shown that the contract was rescinded, or such rescission as would enable the plaintiff to maintain this

action; and upon the further ground "that it appears from the evidence that they have been guilty of laches, which is in itself a defense to this action." Before the motion was granted, the plaintiff offered the deeds back, and filed them ready to be delivered at any time. When the motion was granted, an exception was taken by the plaintiff.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

George D. Reed, for appellant.
Millar & Moyer, for respondents.

HARDIN, P. J.　Plaintiff's complaint alleges that on the 22d of July, 1890, several of the defendants entered into a co-partnership as a voluntary association under the style of the Marion York Association of Lockport, N. Y.　It also alleges that on the 21st of May, 1891, all of the defendants entered into said co-partnership for the purpose of dealing and speculating in real estate, and continued as such up to the 1st of June, 1891; that the defendants, who were members of the co-partnership, September 25, 1890, purchased a large tract of land of Mason, and another in the state of Indiana, particularly described in the complaint, and that the defendants then composing the firm caused the title to the said land to be taken in the name of William H. Wiley, trustee for the defendants' firm and association.　The tract of land so purchased was laid out and divided into blocks and lots for and on account of the defendants.　It is alleged that on July 22, 1890, the defendants then constituting the members of the firm authorized and appointed Wiley one of their managers and agents, and as their trustee to take said title to said land, and to hold the same on account of said firm and association, with full power to sell and convey the same by deed to any persons who might purchase the same.　It is further alleged that on July 22, 1890, the defendants then constituting the association appointed, constituted, and authorized George L. Mason to act as one of the managers of the said firm and association, and to act as an agent for the defendants in the sale of lots contained in the land, and it is averred that Wiley and Mason remained trustees and agents for the defendants to and until after May 21, 1891, and after all of the defendants named became members of the association.　It is further alleged that on the 21st of May, 1891, Wiley and Mason, acting as managers, agents, and trustees for the defendants, represented to this plaintiff that the three lots known as lots 5 and 6 and 28 in block 5 in the York addition to the city of Marion, being part of the premises laid out and so owned by the defendants, "were owned by the defendants aforesaid under said name of Marion York Association of Lockport, N. Y., and that the defendants owned the same in fee simple; and that defendants, as aforesaid, through their said trustee, were fully seised of the premises, and represented that defendants, through their agent and trustee, had a good right to convey the same, and also, as aforesaid, represented and guarantied the quiet possession thereof, and that the same were free and clear from all incumbrances, and that said defendants, as aforesaid, would and did, through their said trustee and agent, warrant and defend the

title to the same against all lawful claims; that said defendants did, through George L. Mason, their agent aforesaid, represent to plaintiff that said property was free and clear from any and all incumbrances; and said William H. Wiley, as trustee of said defendants, as aforesaid, did also represent to plaintiff that said lots aforesaid were clear and free from all incumbrances, and both Mason and Wiley, acting for and on account of defendants as aforesaid, agreed to and did give to plaintiff a full covenant warranty deed." The plaintiff further alleges that Mason and Wiley represented that the defendants were obtaining searches of said property, and the same would be completed in a few days thereafter, and that they, as said agents and trustees aforesaid, would deliver to him a good, proper, and sufficient abstract of title to said premises "showing the said lands aforesaid to be free and clear, and as represented, and the same would be delivered free of expense to plaintiff." It is further alleged that the plaintiff, relying on such statements and representations, "did deliver and pay to the defendants, through their said agent and trustee, the sum of $750 for said lots aforesaid, in good faith, and in full reliance that said representations so made by defendants, as aforesaid, through their agents, were true." It is further alleged that the statements so made by Mason and Wiley "were false and untrue, in that said defendants were not fully seised of said premises, as represented by defendants, through their said agent and trustee; * * * that said premises were not in truth nor in fact free and clear from all incumbrances." It is further alleged "that said money was obtained of this plaintiff by defendants, through its said agent and trustee, through false and fraudulent representations, in that said defendants were not seised in fee of said property, and had not a good right to convey the same as represented; * * * and said property was not free and clear from all incumbrances, as represented; and defendants well knew that they could not guaranty quiet and peaceable possession thereof, and knew that they could not warrant and defend said title, as agreed and represented; and defendants obtained said moneys and received the sum of plaintiff upon said false and untrue representations." It is further alleged that at the time the plaintiff paid the money "said property was not free and clear from all incumbrances, but was incumbered by two certain mortgages at that time,—one for $3,083.37, date September 7, 1890, given to William H. Wiley, trustee"; and another mortgage, given by Wiley, trustee, to George L. Mason, for $4,920.66,—which were recorded in Grant county, Ind., both of which mortgages were unpaid, and were a valid and legal incumbrance and lien upon said premises. It is further alleged that the first-mentioned mortgage was foreclosed, and the property sold under foreclosure proceedings, and afterwards sold and taken by third parties; and that the defendants never redeemed the same, but allowed the title to pass under the foreclosure to third parties. It is further alleged that the defendants received from the plaintiff the money by him paid, "and the same went into a common fund to pay the debts of said defendants." It is also averred that the plaintiff, before the commencement of this action, rescinded the contract of sale, and re-

turned the deed to the defendants, and duly conveyed to them, and placed them in statu quo as much as was in his power. The answer contains several denials of the allegations of the complaint, and alleges that a foreclosure took place of the mortgage given by Wiley to Wesner, and that the premises were bid in by the mortgagee, and a certificate of sale given by the sheriff; and that the premises were again sold in October, 1892, and bid in, and that the defendants procured the same to be redeemed from the sales mentioned, and the lots were deeded to one Thomas A. Smyth, who, on the 22d of January, 1894, tendered a deed to the plaintiff, who refused to accept the deed. The answer contained no other matter in the nature of a defense to the action.

We are of the opinion that the complaint contains facts sufficient to constitute a cause of action. The plaintiff testified that he relied upon the representations made when he paid his money, and that in June, 1893, he learned that there was a mortgage on the property, and that there had been a foreclosure, and he thereupon returned to the city of Rochester, and called upon one of the defendants, "to see what he was going to do about this," and was referred to the attorney for the defendants. He testified further that, after he received the proposed deed from Smyth, he called upon him, and tendered back the deed to him, and notified the defendant that he could not accept a deed. The Smyth deeds, and the conversation held with him in respect thereto, were in the early part of January, 1894. About the 16th day of November, 1895, the plaintiff executed a deed of the premises to Wiley, as trustee, for the association, and the same was acknowledged on the 16th of November, 1895; and the plaintiff testifies that he and his attorney called on one of the defendants, and tendered the deed, and demanded the $600 that he had paid, and that the demand was refused. The summons in this action seems to have been made out in November, 1894, and it was served on several of the defendants on the 2d and 3d days of January, 1895. The plaintiff testified that after he found out that the property was mortgaged he never attempted to take any possession or control of the lots, and that he did not pay any taxes upon them, or claim to own them, and that he made no attempt to sell the lots after he learned of the mortgage and foreclosure. Mr. Reed was called as a witness, and testified to facts and conversations tending, to some extent, to corroborate the testimony given by the plaintiff. In reviewing the nonsuit, the plaintiff is entitled to have the most favorable view taken of the evidence given upon the trial. Harris v. Perry, 89 N. Y. 309. And we think the evidence was sufficient to warrant a finding that the representations were false, and that they induced the plaintiff to part with his money; and that the defendants knew, at the time they made the representations, that the premises were not free and clear of incumbrance. We think sufficient evidence was given tending to show that the plaintiff rescinded the contract of purchase, and in due time sought to avoid the same, by reason of the fraudulent representations of the defendants; and that at the time of the commencement of this action he was in a situation to warrant him in seeking to recover the purchase money. We have found nothing in the evidence which

warrants the conclusion that the defendants suffered by any delay on the part of the plaintiff in his efforts to rescind the contract. Plaintiff was entitled to time and opportunity to ascertain fully the facts and circumstances which warranted him in concluding to rescind the contract. It has frequently been held that the question as to what is reasonable time in which to rescind a contract depends largely upon circumstances. There is no averment in the answer of laches or delay on the part of the plaintiff in rescinding the contract of purchase. In respect to any such defense sought to be maintained by the defendants they have the burden of proof. Zebley v. Trust Co., 139 N. Y. 461, 34 N. E. 1067. We find no evidence in the case indicating that the plaintiff took possession of the property mentioned in the deed, or did any other act in affirmance of the deed which he received of the property, after he discovered the fraud practiced upon him by the defendants. We think the nonsuit was erroneous, and the judgment entered thereon should be reversed.

Judgment reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.